# In the United States Court of Federal Claims

No. 15-1034C
(E-Filed August 15, 2017)

|  |  |  |
|---|---|---|
| DNC PARKS & RESORTS AT YOSEMITE, INC., | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Motion for Summary Judgment; RCFC 56; Affirmative Defenses; Prior Material Breach Doctrine |
| THE UNITED STATES, | ) ) | |
| Defendant, | ) ) | |
| v. | ) ) | |
| YOSEMITE HOSPITALITY, LLC, | ) ) | |
| Third-Party Defendant. | ) ) | |

<u>Thomas P. McLish</u>, Washington, DC, for plaintiff.

<u>John H. Roberson</u>, Senior Trial Counsel, with whom were <u>Benjamin C. Mizer</u>, Principal Deputy Assistant Attorney General, <u>Robert E. Kirschman, Jr.</u>, Director, and <u>L. Misha Preheim</u>, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.

<u>OPINION</u>

CAMPBELL-SMITH, Judge

This case involves alleged breaches of a contract for concession services in Yosemite National Park. See Pl.'s Mot., ECF No. 44 at 4. Plaintiff claims that the government breached its obligation under the contract "by failing to require [plaintiff's] successor concessioner to purchase for fair value all property [plaintiff] used or held for use in its operations at Yosemite, along with [plaintiff's] 'possessory interest' in certain capital improvements." Id. In its answer, defendant asserted several affirmative defenses, including its claim that plaintiff committed a prior material breach of the contract which relieves defendant of any continued performance thereunder, including the obligations plaintiff now alleges defendant was required to fulfill. See Def.'s Answer

to Am. Compl., ECF No. 14 at 27-36.   Before the court is plaintiff's motion for partial summary judgment with regard to that prior material breach affirmative defense, filed under Rule 56 of the Rules of the United States Court of Federal Claims (RCFC).  See ECF No. 44.  Plaintiff's motion is fully briefed.  For the following reasons, plaintiff's motion is **GRANTED**.

I.      Background

In September 1993, the parties entered into a contract whereby plaintiff would provide concession services to a variety of facilities in Yosemite National Park.  See Am. Compl., ECF No. 13 at 2.  The contract had an initial term of fifteen years, until September 30, 2008.  The contract was renewed several times, and ultimately expired on February 29, 2016.  See id.  Since that time, the concessions have been operated by Yosemite Hospitality, LLC, the third-party defendant in this case.  See ECF No. 50 at 6.

The contract at issue here includes two sections that are the subject of the current dispute—"SECTION 12. TERMINATION," see ECF No. 44-2 at 23-24, and "SECTION 13. COMPENSATION," see id. at 24-25.  Those provisions state as follows, and are quoted in full to ensure a complete understanding of the context of the specifically relevant portions:

SECTION 12.  TERMINATION

(a)(1)  The Secretary may terminate this contract or the Concessioner's rights to operate hereunder in whole or in part for default at any time and may terminate this contract in whole or part when necessary for the purpose of enhancing or protecting area resources or visitor enjoyment or safety.

(a)(2)  The operations authorized hereunder may be suspended in whole or in part at the discretion of the Secretary when necessary to enhance or protect area resources or visitor enjoyment or safety.

(a)(3)  Termination or suspension shall be by written notice to the Concessioner and, in the event of proposed termination for default, the Secretary shall give the Concessioner a reasonable period of time to correct stated deficiencies.

(a)(4)  Termination for default shall be utilized in circumstances where the Concessioner has breached any requirements of this contract, including failure to maintain and operate the required accommodations, facilities and services to the satisfaction of the Secretary in accordance with the Secretary's requirements hereunder.

(b)      In the event of termination of this contract or the Concessioner's right

to operate hereunder necessary for the purpose of enhancing or protecting area resources or visitor enjoyment or safety, or for default, the total compensation to the Concessioner for such termination shall be as described in Section 13, "Compensation".

(c)     In the event it is deemed necessary to suspend operations hereunder in whole or in part to enhance or protect area resources or visitor enjoyment or safety, the Secretary shall not be liable for any compensation to the Concessioner for losses occasioned thereby, including but not limited to, lost income, profit, wages, or other monies which may be claimed, except as may be provided in Section 13 hereof.

(d)     To avoid interruption of services to the public upon the expiration or termination of this contract or the Concessioner's rights to operate hereunder for any reason, the Concessioner, if requested by the Secretary, will:

(1)     continue to conduce the operations authorized hereunder, pursuant to the terms hereof, for a reasonable time to allow the Secretary to select a successor, or will

(2)     consent to the use by a temporary operator, designated by the Secretary, of the CONSSIONER IMPROEMENTS and personal property, if any, not including current or intangible assets, used in the operations authorized hereunder upon fair terms and conditions, provided that the Concessioner shall be entitled to an annual fee for the use of such improvements and personal property, prorated for the period of use, in the amount of the annual depreciation on such improvements and personal property, plus a return on the book value of such improvements and personal property equal to the prime lending rate, effective on the date the temporary operator assumes managerial and operational responsibilities, as published by the Federal Reserve System Board of Governors or as agreed upon by the parties involved.  In this instance the method of depreciation used shall be either straight line depreciation or depreciation shown of Federal Tax Returns.

SECTION 13.  COMPENSATION

(a)     The compensation described herein shall constitute full and just compensation to the Concessioner from the Secretary for all losses and claims occasioned by the circumstances described below.

(b)     EXPIRATION   OR   TERMINATION,   OPERATIONS   ARE CONTINUED

3

(b)(1) If for any reason, including contract expiration or termination as described herein, the Concessioner shall cease to be required by the Secretary to conduct the operations authorized hereunder, or substantial part thereof, and, at the time of such event the Secretary intends for substantially the same or similar operations to be continued by a successor, whether a private person, corporation or an agency of the Government, the Concessioner will:

(i)      sell and transfer to the successor designated by the Secretary its POSSESSORY INTEREST in CONCESSIONER and GOVERNMENT IMPROVEMENTS, if any, as defined under this contract, and all other property of the Concessioner used or held for use in the connection with such operations; and

(ii)     the Secretary will require such successor, as a condition to the granting of a contract to operate, to purchase from the  Concessioner such POSSESSORY INTEREST, if any, and such other property, and to pay the Concessioner the fair value thereof.

(b)(2) The fair value of any POSSESSORY INTEREST in CONCESSIONER IMPROVEMENTS or in GOVERNMENT IMPROVEMENTS shall be the original cost less straight line depreciation over the estimated useful life of the asset according to Generally Accepted Accounting Principals [sic], provided, however, that in no event shall any such useful life exceed 30 years.  In the event that such POSSESSORY INTEREST is acquired by a successor, the successor will not be permitted to revalue such POSSESSORY INTEREST, or alter the method of depreciation or useful life.

(b)(3) The fair value of merchandise and supplies shall be actual cost including transportation.

(b)(4) The fair value of equipment, and, computer software and programs, shall be book value.

(c)     EXPIRATION   OR   TERMINATION,   OPERATIONS   ARE DISCONTINUED

(c)(1) If for any reason, including contract expiration or termination as described herein, the Concessioner shall cease to be required by the Secretary to conduct the operations authorized hereunder, or substantial part thereof, and the Secretary at the time chooses to discontinue such operations, or substantial part thereof within the area, and/or to abandon, remove, or demolish any of the CONCESSIONER IMPROVEMENTS, if any, then the Secretary will take such action as may be necessary to assure the

Concessioner of compensation for:

(i)   its POSSESSORY INTEREST, if any, in the amounts as set forth in Section 13(b)(2) hereof;

(ii)   the cost to the Concessioner of restoring any assigned lands to a natural condition, including removal and demolition, (less salvage) if required by the Secretary; and

(iii)   the cost of transporting to a reasonable market for sale such movable property of the Concessioner as may be made useless by such determination.

(c)(2) Any such property that has not been removed by the Concessioner within a reasonable time following such determination shall become the property of the United States without compensation therefor.

(d)   DEFAULT

Notwithstanding any other provision of this contract to the contrary, in the event of termination of this contract for default for failure to maintain and operate the required accommodations, facilities, and services to the satisfaction of the Secretary in accordance with the Secretary's requirements hereunder, compensation for the Concessioner's POSSESSORY INTEREST in CONCESSIONER IMPROVEMENTS and in GOVERNMENT IMPROVEMENTS, if any, shall be as set forth in Section 13(b)(2) hereof.

ECF No. 44-2 at 23-25.

Plaintiff alleges that defendant breached its obligation to ensure that the third-party defendant purchased the subject property at a fair price.  See Am. Compl., ECF No. 13 at 22-23.  In addition, plaintiff alleges that defendant's failure to ensure the purchase of certain property was a breach of the covenant of good faith and fair dealing, see id. at 23-24, as well as a violation of the terms of the prospectus that governed the solicitation of the new concessions contract, see id. at 24-25.

In its answer to plaintiff's amended complaint, defendant asserted three affirmative defenses:  (1) mootness of several claims, see ECF No. 14 at 23; (2) failure to state a claim upon which relief can be granted, see id. at 24-26; and (3) prior material breach of the covenant of good faith and fair dealing, claiming that plaintiff provided, in bad faith, an inflated value for the property it expected the third-party defendant to purchase, see id. at 27-36.  Plaintiff now seeks summary judgment on the last defense, claiming that the terms of the contract prevent defendant from availing itself of the common law defense of prior material breach.  See ECF No. 44.

5

II.     Legal Standards

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  RCFC 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A fact is material if it "might affect the outcome of the suit under the governing law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  An issue is genuine if it "may reasonably be resolved in favor of either party."  Id. at 250.  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Id. at 247-48 (emphasis in original).

The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact.  Celotex Corp., 477 U.S. at 323.  The burden then shifts to the nonmoving party to show that a genuine issue of material fact does exist such that the case should proceed to trial.  Id. at 324.

The court must view the inferences to be drawn from the underlying facts in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1391 (Fed. Cir. 1987).  The court, however, must not weigh the evidence or make findings of fact.  See Anderson, 477 U.S. at 249 ("[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."); Ford Motor Co. v. United States, 157 F.3d 849, 854 (Fed. Cir. 1998) ("Due to the nature of the proceeding, courts do not make findings of fact on summary judgment.").

This case presents a question of contract interpretation, an issue properly resolved as a matter of law.  See Grumman Data Sys. Corp. v. Dalton, 88 F.3d 990, 997 (Fed. Cir. 1996).  When interpreting a contract, the court looks first to the plain language.  See McAbee Constr., Inc. v. United States, 97 F.3d 1431, 1435 (Fed. Cir. 1996).  "We give the words of the agreement their ordinary meaning unless the parties mutually intended and agreed to an alternative meaning."  Harris v. Dep't of Veterans Affairs, 142 F.3d 1463, 1467 (Fed. Cir. 1998).  "A contract should be interpreted in such a way that all parts make sense."  Hughes Comms. Galaxy, Inc. v. United States, 998 F.2d 953, 958 (Fed. Cir. 1993) (citing United States v. Johnson Controls, Inc., 713 F.2d 1541, 1555 (Fed.Cir.1983)).

A contract term is ambiguous if it is "susceptible to more than one reasonable interpretation."  McAbee, 97 F.3d at 1435.  Absent ambiguity, the court must give the contract terms their "plain and ordinary meaning," and may not consider evidence extrinsic to the agreement.  Id. (citing Alaska Lumber & Pulp Co. v. Madigan, 2 F.3d 389, 392 (Fed. Cir. 1993) and Interwest Constr. v. Brown, 29 F.3d 611, 615 (Fed. Cir. 1994)).

III.    Analysis

Although neither the plaintiff nor the defendant frames the issue in precisely this way, in order to determine whether defendant may raise the affirmative defense of prior material breach, the court must engage in a two-part analysis.  First, the court must decide whether the parties are legally able to contract around the common law defense of prior material breach.  If so, the court then must consider whether the parties effectively did so.

A.      Parties to a contract can legally agree to terms that displace the common law defense of prior material breach.

As an initial matter, the court notes the wide latitude that parties have in establishing the terms of a contract between them.  As the Court of Claims has observed: "It is so basic a tenet of contract law as to require no citation, that each party is entitled to compliance by the other party with the plain terms of their agreement, unless it is palpably illegal."  Am. Chemical Soc'y v. United States, 438 F.2d 597, 604 (Ct. Cl. 1971).

In its response to plaintiff's motion, defendant insists that the defense of prior material breach is available "irrespective of any contractual termination clause."  See ECF No. 50 at 14.  Defendant also describes its position as follows: "where a party breaches a contract with a termination clause with respect to a central, material term of the contract, and does so in bad faith, the non-breaching party is not required to adhere to the contract's termination clause requirements."  See ECF No. 50 at 16.  Defendant seems to argue that it is not possible for the parties to agree to terms that absolutely displace the common law defense of prior material breach.  Instead, defendant insists, that a breach committed in bad faith, such as the breach plaintiff allegedly committed here, prevents the operation of any such contract provision.  See id. at 15.  To be clear, defendant does not argue that either the termination provision or compensation provision of the contract is illegal.  But defendant, essentially, argues for an exception to the general rule that the parties are free to agree to, and will be bound by, any legal contract terms.

In support of this argument, defendant cites as the "seminal case," Olin Corp. v. Central Industries, Inc., 576 F.2d 642, 647 (5th Cir. 1978).  Id. at 16.  In Olin, the United States Court of Appeals for the Fifth Circuit reviewed the language of a termination provision included in a contract for the sale of fertilizer.  Olin, 576 F.2d at 647.  The termination provision at issue entitled the breaching party to provide notice of the breach and the opportunity to cure the breach prior to termination.  Id.  The court concluded that, because the contract did not indicate that the termination clause outlined the exclusive means for terminating the contract, the defense of prior material breach was a "cumulative remedy," allowing immediate "termination for 'a breach which is material, or which goes to the root of the matter or essence of the contract.'"  Id. (quoting Williston on Contracts § 842 (3d ed.)).

Defendant cites a number of additional cases that follow on the reasoning from Olin. See L.K. Comstock & Co. v. United Eng'rs & Constructors, Inc., 880 F.2d 219, 232 (9th Cir. 1989) (quoting the discussion of Olin in 2 Corbin on Contracts § 1266 (C. Kaufman supp. 1984) for the proposition that a termination clause governing notice of a breach and opportunity to cure will not operate to prevent the non-breaching party from rescinding the contract when a "vital breach," frustrating the purpose of the contract, is committed); Larken, Inc. v. Larken Iowa City Ltd. P'ship, 589 N.W.2d 700, 704 (Iowa 1998) (holding that the non-breaching party was not required to comply with the notice and opportunity to cure provisions of the contract prior to termination when the breach "went to the heart of the contract"); LJL Transp., Inc. v. Pilot Air Freight Corp., 599 Pa. 546, 567, 962 A.2d 639, 652 (2009) (concluding that "when there is a breach of contract going directly to the essence of the contract, which is so exceedingly grave as to irreparably damage the trust between the contracting parties, the non-breaching party may terminate the contract without notice, absent explicit contractual provisions to the contrary"); Southland v. Mir, 748 F.Supp. 969 (E.D.N.Y. 1990) (holding that a breach that went to the "essence of the contract" vitiated the need to comply with the notice and cure provisions of the contract). Desly Int'l Corp. v. Otkrytoe Aktsionernoe Obshchestvo "Spartak", 2016 WL 4532113 (E.D.N.Y. Aug. 29, 2016) (quoting Olin, 576 F.2d at 647: "Unless a contract provision for termination for breach is in terms exclusive, it is a cumulative remedy and does not bar the ordinary remedy of termination for a breach which is material, or which goes to the root of the matter or essence of the contract.").

This line of cases, however, does not go as far as defendant's argument. Even the court's decision in Olin qualifies its conclusion as applicable only if the termination provision at issue is not "exclusive." Olin, 576 F.2d at 647. This necessarily implies that the parties are free to agree to such an exclusive term, and cannot support application of the blanket rule advocated by defendant in this case.

The reasoning in a recent case decided by this court bolsters this conclusion. In K-Con Bldg. Sys., Inc. v. United States, 131 Fed. Cl. 275 (2017), the court considered whether the defense of prior material breach precluded the recovery of liquidated damages provided for in the contract at issue. The case involved a contract between plaintiff and the Coast Guard for construction of a prefabricated building. See id. at 278. The plaintiff did not complete the work, and as a result, the Coast Guard assessed liquidated damages and terminated the contract for default. See id. In its initial complaint, plaintiff challenged the termination and liquidated damages assessment, while defendant counterclaimed to recover the liquidated damages. See id. Plaintiff defended its claim to avoid payment of liquidated damages, in part, on the basis that defendant's improper termination of the contract was a prior material breach. See id. at 332-333.

The court began its analysis by defining the doctrine of prior material breach as follows: "when a party to a contract is sued for breach, it may defend on the ground that there existed a legal excuse for its nonperformance at the time of the alleged breach." See

id. at 332 (quoting <u>Barron Bancshares, Inc. v. United States</u>, 366 F/3d 1360, 1380 (Fed. Cir. 2004)).  The court explained that the doctrine:

> is based on the principle that where performances are to be exchanged under an exchange of promises, each party is entitled to the assurance the he will not be called upon to perform his remaining duties of performance with respect to the expected exchange if there has already been an uncured material failure of performance by the other party.

<u>Id.</u> at 332-33 (quoting Restatement (Second) of Contracts § 237 cmt. b (Am. Law Inst. 1981)).  Although the court recognized that the Coast Guard had, in fact, breached the contract, the court held that the doctrine of prior material breach did not allow plaintiff to avoid paying liquidated damages for its own breach on that basis.  The court concluded that the express terms of the contract made clear that plaintiff was liable for liquidated damages, irrespective of the Coast Guard's breach.  <u>See</u> <u>id.</u> at 333.

The court's decision in <u>K-Con</u> is in accord with the general contract principle that the parties are free to contract for, and are bound by, any legal terms included in a contract.  The cases presented by defendant do not persuade the court to depart from this maxim. As such, the court declines to adopt defendant's position that a prior material breach necessarily means that it would avoid liability to compensate plaintiff pursuant to the termination clause in the contract.  Instead, the court will look to the specific language in the contract to make that determination.

      B.     The contract expressly provides for compensation when the contract is terminated.

The contract provisions at issue, quoted in full above, relate to the issues of contract termination and compensation.  <u>See</u> ECF No. 44 at 6-7 (plaintiff's' motion identifying sections 12 and 13 as the subject of this dispute); ECF No. 50 at 7 (defendant's response identifying sections 12 and 13 as the provisions at issue). With regard to termination of the contract, the following provisions are of particular relevance here:

SECTION 12.  <u>TERMINATION</u>

(a)(4)  Termination for default shall be utilized in circumstances where the Concessioner has breached any requirements of this contract . . .

(b)     In the event of termination of this contract or the Concessioner's right to operate hereunder . . . for default, the total compensation to the Concessioner for such termination shall be as described in Section 13, "Compensation".

ECF No. 44-2 at 23.

The court finds these provisions unambiguous, and the plain language leads directly to two conclusions. First, the contract dictates that termination resulting from any breach on plaintiff's part will be treated as a termination for default. Defendant has made no argument that the breach alleged here falls outside the scope of this clause, beyond the assertion addressed at length above that plaintiff's prior material breach excuses defendant's compliance with the termination provisions. Defendant argues that plaintiff was <u>required</u> to fulfill its duty of good faith and fair dealing in executing under the contract, but breached that obligation, therefore excusing defendant from performing its remaining obligations under the contract. <u>See</u> ECF No. 14 at 27-36 (statement of defendant's third affirmative defense); ECF No. 50 at 12 (defendant contends that "[t]he breach of the duty of good faith and fair dealing constituted a prior material breach, providing a legal excuse of the NPS's nonperformance with respect to Section 13 of the Contract"). The broadly inclusive language in section 12(a)(4), in the court's view, obviates any argument that this provision excludes the breach alleged here.

This conclusion is also supported by the broadly inclusive language in section 13(b)(1), which states that the compensation provisions apply "<u>[i]f for any reason</u>, including contract expiration or termination as described herein, the Concessioner shall cease to be required by the Secretary to conduct the operations authorized hereunder." ECF No. 44-2 at 24 (emphasis added).

In addition, section 12(b) clearly indicates that, in the event that the contract is terminated for default, the compensation provisions in section 13 remain operative—that compensation due to plaintiff "shall be as described" therein. Plaintiff correctly states, "the Contract itself provides that [plaintiff's] rights under Section 13 survive even if it were to default under the Contract." ECF No. 44 at 11. As such, the parties have agreed to contract terms that displace defendant's ability to assert the defense of prior material breach to avoid payment to plaintiff under section 13.

The parties have no dispute regarding the contract language at issue. Because that language is unambiguous, the court has no need to consider evidence extrinsic to the contract. Consequently, any disputes of fact that may exist between the parties are immaterial to the court's present analysis.[1]

---

[1]    Third-party defendant claims, in its opposition to plaintiff's motion, that defendant should be permitted to raise the defense of prior material breach because the provisions of the contract are divisible. <u>See</u> ECF No. 65. This argument fails for the same reasons defendant's argument fails—the parties have agreed to terms that require defendant to comply with the compensation requirements of section 13, even assuming a breach on plaintiff's part.

IV.     Conclusion

        For the foregoing reasons, plaintiff's motion for partial summary judgment, ECF No. 44, is **GRANTED**, and defendant's third affirmative defense asserted in answer to the amended complaint, ECF No. 14, is **DISMISSED**.

        On March 13, 2017, the court suspended all deadlines in this case.  See ECF No. 53.  The parties are directed to confer and file a joint status report proposing a schedule to govern the next steps in this litigation, on or before **September 1, 2017.**

        IT IS SO ORDERED.

                                        s/ Patricia Campbell-Smith
                                        PATRICIA CAMPBELL-SMITH
                                        Judge